UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHELEATRICE ALLEN, <br> *on behalf of J.J., a minor*, <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, <br> *Acting Commissioner of Social Security*, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 4:16 CV 194 JMB <br> ) <br> ) <br> ) <br> ) <br> ) |

## **MEMORANDUM AND ORDER**[1]

Sheleatrice Allen ("Plaintiff"), on behalf of J.J., a minor, appeals the decision of the Acting Commissioner of Social Security ("Defendant") denying disability benefits under Title XVI of the Social Security Act. See 42 U.S.C. § 401 *et seq*. Because Defendant's decision is not supported by substantial evidence, as discussed below, it is **REVERSED** and this cause is **REMANDED** for additional proceedings. See 42 U.S.C. § 1383(c)(3).

**I.      Procedural and Factual Background**

Plaintiff is the grandmother of J.J., a minor who was a five year old boy at the time of the original disability application at issue in this case, which was filed on October 9, 2012. In the application, Plaintiff alleges that J.J. is disabled because of attention deficit hyperactive disorder ("ADHD"), attention deficit disorder ("ADD"), behavioral problems, stuttering, asthma, and learning disabilities. (Tr. 53) Plaintiff's application was denied, (Tr. 62) and Plaintiff then requested a hearing before an administrative law judge ("ALJ"). Plaintiff appeared (with counsel) at this hearing, along with J.J., on March 28, 2014. Both Plaintiff and J.J. testified concerning the nature and extent of J.J.'s disability and functional limitations. (Tr. 35-52)

---
[1] The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c).

In a decision dated June 4, 2014, the ALJ found that J.J. was not disabled. (Tr. 19-29) Plaintiff appealed that decision, but the Appeals Council declined review. (Tr. 1-3) Plaintiff has therefore exhausted her administrative remedies, and the matter is properly before this Court.

In deciding that J.J. was not disabled, the ALJ followed the three-step inquiry that applies in child disability cases, as set out in the Commissioner's regulations. See 20 C.F.R. § 416.924(a). At step one, the ALJ found that J.J. was a preschooler at the time of his original disability application, and that J.J. was not engaged in substantial gainful activity. (Tr. 21-22) At step two, the ALJ found that J.J. has the following severe impairments: asthma; ADHD; stutter; and fine motor/visual motor skill delay.[2] (Tr. 22) At step three, the ALJ had to undertake a multi-pronged analysis. The ALJ had to first determine whether J.J.'s severe impairments met or medically equaled a listed impairment. If not, the ALJ had to determine whether J.J.'s severe impairments functionally equaled a listing. The ALJ held (and Plaintiff does not contest) that J.J.'s impairments do not meet or medically equal a listing.

In determining whether J.J.'s severe impairments "functionally" equaled a listing, the ALJ evaluated J.J.'s functioning within the six required domains. The ALJ found that J.J. had "less than marked" limitations in all of the six domains, except for the domain of acquiring and using information, where the ALJ found that J.J. had "no limitations." (Tr. 22-28) Because J.J. did not suffer from either "extreme" limitations in one domain, or "marked" limitations in two domains, the ALJ found that there was no functional equivalence between J.J.'s impairments and a listing. (Tr. 28)

In arriving at this conclusion, the ALJ evaluated Plaintiff's and J.J.'s credibility, and evaluated multiple pieces of medical opinion evidence. With regard to credibility, the ALJ

---

[2] The ALJ found J.J.'s mild sleep apnea and obesity to be non-severe impairments. (Tr. 22)

determined that Plaintiff and J.J. were "generally credible," but that their testimony at the hearing was "not indicative of total disability." (Tr. 22) As to the medical opinion evidence, the ALJ did not specifically assign weight to the various pieces of opinion evidence, but he clearly relied on the opinions of three state agency decision-makers who ultimately opined that J.J. was not functionally disabled. (Tr. 56-58)

Before this Court, Plaintiff makes several arguments for reversal. First, she makes the broad and overarching argument that the ALJ did not provide "sufficient detail" in his analysis of J.J.'s functioning. Plaintiff argues that it is not clear which evidence the ALJ is pointing to in order to support his conclusions. Second, Plaintiff argues that the ALJ's conclusions regarding three of the domains are not supported by substantial evidence. In particular, Plaintiff argues that the ALJ's conclusions that J.J. suffers from "less than marked" limitations in the domains of attending and completing tasks, interacting with others, and moving and manipulating objects are not supported by substantial evidence. In response, Defendant argues that all of the ALJ's conclusions are supported by substantial evidence.

## II.     Legal Framework and Standard of Review

Children from low income families may receive Title XVI benefits if certain income and asset requirements are met, and if the child qualifies as "disabled." See 42 U.S.C. § 1382(a)(1). A child under the age of eighteen is disabled if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 42 U.S.C. § 1382c(a)(3)(C)(i). As noted above, the Commissioner employs a three-step sequential evaluation process to determine whether a child meets this definition. See 20 C.F.R. § 416.924(a).

At step one, the Commissioner determines whether the child is engaged in "substantial gainful activity." If so, the claim is denied; if not, the Commissioner moves on to step two. See 20 C.F.R. §§ 416.924(a), (b). At step two, the Commissioner determines whether the child suffers from any impairments or combination of impairments that are "severe." 20 C.F.R. § 416.924(a). Under these rules, an impairment is not severe if it "causes no more than minimal functional limitations." See 20 C.F.R. § 416.924(c). If the child suffers from an impairment or combination of impairments that qualifies as "severe," the analysis moves to step three. At step three, the Commissioner determines whether the child has a severe impairment or combination of impairments that: (1) meets; (2) medical equals; or (3) functionally equals a listed impairment set forth in Appendix 1 of 20 C.F.R. pt. 404, subpart P. See 20 C.F.R. § 416.924(d).

To "meet" or "medically equal" a listing, a child's severe impairment must meet the severity criteria for an individual listing. See id. But if a child has a severe impairment or combination of impairments that does not "meet" or "medically equal" any listing, the Commissioner will analyze whether the child has limitations that "functionally equal" a listing. See 20 § C.F.R. 416.926a(a).

In considering functional equivalence, the Commissioner looks at how the child's impairments affect "broad areas of functioning" known as "domains." 20 C.F.R. § 416.926a(b). To equal a listing functionally, the impairments must result in "marked"[3] limitations in two domains of functioning, or an "extreme"[4] limitation in one domain. There are six domains:

---

[3] A "marked" limitation is one which "interferes seriously with your ability to independently initiate, sustain, or complete activities … [m]arked limitation also means a limitation that is more than moderate, but less than extreme. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." See 20 C.F.R. § 416.926a(e)(2)(i).

[4] An "extreme" limitation is one which "interferes very seriously with your ability to independently initiate, sustain, or complete activities … [e]xtreme limitations also means a

(i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating to others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being.

See 20 C.F.R. § 416.926a(d). If a claimant fails to meet the burden at any of these steps, the ALJ must find the child not disabled. See 20 C.F.R. § 416.924(a).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). The ALJ's findings should be affirmed if they are supported by "substantial evidence" on the record as a whole. See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008).

Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id.

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if

---

limitation that is more than marked. Extreme limitation is the rating we give to the worst limitations. However, 'extreme' limitation does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean."

-5-

substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

## III. Discussion

As discussed above, Plaintiff raises several arguments for reversal, ranging from the concerns over the opinion writing of the ALJ, to issues with the ALJ's substantive findings in three domains. As discussed in more detail below, the Court agrees with Plaintiff that the ALJ's disability conclusion here should be remanded, because it is not clear from the ALJ's written decision whether he properly reviewed the evidence. In the Court's view, "[s]everal errors and uncertainties in the [ALJ's] opinion, that individually might not warrant remand, in combination create sufficient doubt about the ALJ's rationale for denying [plaintiff's] claims to require further proceedings." Willcockson v. Astrue, 540 F.3d 878, 880 (8th Cir. 2008).

The Court agrees with Plaintiff's argument that the ALJ failed to sufficiently discuss the evidence that supports his conclusion that Plaintiff is not disabled. See ECF No. 19 at 3-4 (arguing that the ALJ "provided no actual discussion or analysis to help a subsequent reviewer of his decision understand why the evidence he cited purportedly supported only less than marked limitations, as opposed to marked. In short, the ALJ did not provide sufficient detail as required by SSR 09-1p") (emphasis in original).

A few examples serve to illuminate the ALJ's failure to adequately discuss and provide detail concerning his analysis. The ALJ found at the beginning of his analysis that Plaintiff and J.J. are "generally credible," (Tr. 22) but he did not credit Plaintiff's testimony of disabling functional limitations. Plaintiff testified that J.J. does not get along with others, is hyperactive, does not have friends, and sometimes gets physically violent at school. (Tr. 40) Plaintiff stated

that J.J. regularly gets into trouble at school and has been suspended. Plaintiff further testified that J.J. will hit himself in the head and that he hits walls and doors daily. Plaintiff represented that J.J. has problems competing tasks, such as cleaning up his toys or putting away his clothes, and that J.J. reportedly needs help taking care of his personal needs, such as brushing his teeth. J.J. also allegedly has a stutter that causes him to get frustrated, and he has trouble sleeping. Finally, Plaintiff said that J.J. receives special education to work on his motor skills and speech. If the ALJ truly found this testimony credible, he should have explained how and why contradictory evidence in the record was given more weight.

Similarly, the ALJ committed procedural error to the extent that he did in fact discount Plaintiff's credibility. This is because ALJs are required to make express credibility determinations, and then explain the weight that they give to a plaintiff's statements concerning their functional limitations. Lowe v. Apfel, 226 F.3d 969, 971 (8th Cir. 2000); cf. Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005) (holding that an ALJ must "detail the reasons for" discrediting a plaintiff's credibility). Here, the ALJ did not expressly address the reasons behind the credibility determination that he made. The ALJ simply stated that the allegations were "generally credible" but did not elaborate on the basis for his opinion.

To the extent the ALJ's statement regarding credibility was intended as an adverse credibility finding, the ALJ did not address how the objective medical evidence and other record evidence supported this conclusion. The ALJ also failed to address the factors required by Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). The Court cannot determine from the ALJ's conclusory statement regarding credibility whether it was an adverse finding, and likewise cannot determine if the ALJ had "good reasons and substantial evidence" for discounting

Plaintiff's credibility as required under Eighth Circuit law. Cf. Julin v. Colvin, 826 F.3d 1082, 1086 (8th Cir. 2016) (requiring "good reasons" to uphold a credibility determination).

Because the ALJ committed procedural error in analyzing Plaintiff's credibility, and because the ALJ's stated credibility determination is in tension with the ALJ's ultimate disability determination, this case must be remanded for clarification on this point.

Another example of procedural error is the ALJ's treatment of the medical opinion evidence. Nowhere does the ALJ discuss the amount of weight that he assigned to the medical professionals who opined on J.J.'s limitations. This is problematic because "the administrative law judge must explain in the decision the weight given to the opinions of a state agency medical or psychological consultant." See 20 C.F.R. § 416.927(e)(2)(ii); see also Willcockson, 540 F.3d at 880 (remanding where, *inter alia*, the ALJ failed to explain the weight given to a state agency medical consultant, because additional explanation of the weight assigned to the consultant "would have both complied with the regulation and assisted [the reviewing court] in reviewing the decision"). Here, the ALJ did not meet this obligation.

This error could be significant because the ALJ may have incorrectly interpreted the medical opinions. For example, the ALJ asserts that the state agency consultants found J.J. had "no limitation" in the domain of interacting and relating with others. (Tr. 25) This conclusory statement omits the fact that both Dr. Aine Kresheck, Ph.D, a psychologist, and Tricia Petrillo, a speech-language pathologist (both of whom evaluated J.J.'s medical file), specifically found that J.J. had marked limitations in this area. (Tr. 57) The ALJ should not have disposed of a discrepancy of this magnitude with a single, conclusory sentence that there were "no limitations" in this domain. Based on the existing record, the undersigned cannot say that this error is in anyway harmless. See Brueggeman v. Barnhart, 348 F.3d 689, 695-96 (8th Cir. 2003) (holding

-8-

that an ALJ's error in evaluating conflicting evidence was not harmless where, on the record as a whole, it was not clear that the ALJ would have reached the same decision without the error).

Additionally, the ALJ's decision does not address some objective medical evidence that arguably proves J.J. was more than two standard deviations below the mean for fine motor skills, which is the definition of marked limitations in the domain of moving about and manipulating objects. See 20 C.F.R. § 416.926a(e)(2) (holding that a marked limitation "is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean"). This evidence comes from a Peabody Development Motor Scales Test given to J.J. on October 18, 2012. On this test, J.J. achieved a fine motor quotient score of 64, which placed him in lower than the 1st percentile for his age group, and more than two standard deviations below the mean for fine motor skills. (Tr. 140, 147)[5]

In conclusion, this case was already a close one. Substantial evidence arguably supports both the determination that J.J. is disabled, and that J.J.'s impairments do not rise to the level of disability. Compare, e.g., ECF No. 19 at 5-10 (describing medical records that show marked functional limitations, such as Dr. Gretchen Meyer's evaluation of J.J, where she found he had a "significant" stutter, with "extremely poor" intelligibility, which caused him to be understood "less than 50% of the time" (Tr. 372-380); and school records showing that J.J.'s Individualized Education Plan noted J.J. had behavioral deficits that negatively impacted his ability to attend to and complete activities, comply with instructions, and remain seated) (Tr. 135); with ECF No. 24 at 6-10 (describing evidence that J.J.'s attention span was adequate when given redirection to

---

[5] A final example of the ALJ's failure to provide sufficient detail to support his conclusions is the ALJ's treatment of the first two parts of the step three analysis. The ALJ did not offer any explanatory reasoning behind his conclusion that J.J.'s severe impairments do not "meet" or "medically equal" a listing. (Tr. 22)

stay on task (Tr. 205, 210); that Plaintiff admitted J.J. had "no significant communication problem;" and that J.J. "cooperated with family, friends and teachers" (Tr. 301)).

Given that this case was close already, the ALJ's procedural errors serve to convince the undersigned that the correct thing to do is to remand this matter, and allow the ALJ to issue a new decision addressing the deficiencies identified in this opinion. See Willcockson, 540 F.3d at 879-880. In particular, the ALJ should conduct a more explicit credibility analysis that addresses the objective medical evidence and the factors articulated in Polaski. See 739 F.2d at 1322. The ALJ should also address in more detail the weight given to the medical opinion evidence used in this case, and the reasons underlying that determination. Finally, the ALJ should articulate in more detail the medical and other evidence of record supporting each of his conclusions regarding the three domains at issue here.

**IV.     Conclusion**

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Administrative Law Judge in this matter is **REVERSED**, and the cause is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for additional proceedings consistent with this opinion.

A separate Judgment shall be entered this day.

/s/ ***John M. Bodenhausen***
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of December, 2016